UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENG REN SILK ROAD INVESTMENTS LLC, HENG REN INVESTMENTS LP, ARNE H. FREDLY, derivatively on behalf of SINO AGRO FOOD INC.<br><br>                Plaintiffs,<br>   vs<br><br>LEE YIP KUN SOLOMON,<br><br>                Defendants.<br><br>   and<br><br>SINO AGRO FOOD INC.,<br><br>                Nominal Defendant | Case No. 21-cv-9236<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** |

Plaintiffs Heng Ren Silk Road Investments LLC, Heng Ren Investments LP ("**Plaintiffs**"), and Arne H. Fredly by and through their undersigned attorneys, submit this Verified Shareholder Derivative Complaint against Sino Agro Food, Inc. ("**SIAF**" or the "**Company**") and Lee Yip Kun Solomon ("**Defendant Lee**").

Plaintiffs allege the following based upon personal knowledge as to themselves and their own acts, and based on investigation by themselves, which included, among other things, the review and analysis of various governmental filings in U.S. and China, commissioned third party on-site due diligence, interviews, and the review of other publicly available information.

## **NATURE OF ACTION**

1. This is a shareholder derivative action brought for the benefit of SIAF and its shareholders.

2. SIAF, a Nevada corporation, is an agriculture technology and natural food holding company operating in China. SIAF trades on the "pink sheets," and is supposed to report truthfully to the U.S. Securities and Exchange Commission ("**SEC**").

3. On March 26, 2019, Plaintiffs filed a derivative complaint on behalf of SIAF against some of the same Defendants before this Court ("**First SIAF Suit**").

4. On June 27, 2020, the parties to the First SIAF Suit entered into a Settlement Agreement which was later approved by the Court ("**Settlement**"). **Exs. A & B**. The First SIAF Suit was dismissed with prejudice upon approval, but "the Court retained exclusive jurisdiction over the Derivative Actions to consider all further matters arising out of or connected with the Settlement." **Ex. B**, ¶ 6.

5. A year has passed since the final approval order, but Plaintiffs have seen effectively no effort by Defendants to comply with the Settlement, only delaying tactics.

6. Indeed, Defendant Lee has continued to conceal from shareholders the Company's actual financial condition. For a year after the execution of the Settlement, Defendants failed to file financials. Then, after being threatened with suit, Defendants filed unaudited financials for fiscal year 2020 and the second quarter of 2021, containing materially false and misleading omissions, including that the Company's "crown jewel" asset is in bankruptcy.

7. This derivative action is brought seeking equitable relief and damages to remedy, inter alia, (i) the Company's breach of the Settlement; (ii) the false statements and omissions that the Defendants are continuing to issue to shareholders; and (iii) breaches of fiduciary duties by the Defendant Lee, including, inter alia, continuing gross mismanagement, fraudulent statements to the Company's independent director and to shareholders, and unexplained material default under the Settlement.

## PARTIES

8. Plaintiff Heng Ren Silk Road Investments LLC is a limited liability corporation incorporated under the laws of the Cayman Islands. Heng Ren Silk Road Investments LLC is currently and has at all material times of this action been a shareholder of the Company.

9. Plaintiff Heng Ren Investments LP is a limited partnership incorporated under the laws of the Commonwealth of Massachusetts, U.S.A. Heng Ren Investments LP is currently and has at all material times of this action been a shareholder of the Company.

10. Plaintiff Arne H. Fredly is a citizen of Norway residing in Monaco. Mr. Fredly has at all material times of this action been a shareholder of SIAF

11. Defendant SIAF is a Nevada corporation with its principal executive offices located in China. SIAF securities trade on the OTC QX market, and the Company files its financial reports with the SEC.

12. Defendant Lee is the current Chairman of the Board of Directors of the Company as well as the President, CEO, and CFO of the Company. Upon information and belief, Defendant Lee is an Australian citizen.

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

14. Furthermore, pursuant to the Judgment Approving Settlement and Dismissing with Prejudice issued on October 13, 2020 in the First SIAF Suit, this Court has retained "exclusive jurisdiction over the Derivative Actions to consider all further matters arising out of or connected with the Settlement." **Ex. B**, ¶ 6.

15. This Court has jurisdiction over each Defendant named herein because SIAF is a corporation that conducts and transacts business in this District, and otherwise has sufficient minimum contacts with the U.S. and this District.

16. Defendant Lee, through directing SIAF's actions and disclosures, and benefiting personally from such acts at the expense of SIAF shareholders, also has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because each of the Defendants are subject to personal jurisdiction of this District with respect to this action.

18. In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## FACTUAL ALLEGATIONS

### A. The First SIAF Suit and the Settlement

19. Over years, the Company has been operating under the absolute power and super majority control of Solomon Lee. In particular, Defendant Lee, with just an 8.38% equity ownership interest in the Company, has a super majority voting right interest by himself through controlling "A Shares" that give him 61.67% of the Company's voting rights.

20. Such unchecked power over the Company has shielded Lee from any consequences of wrongful conduct. Indeed, due to systematic and continuing governance failures and mismanagement, Lee has caused the Company to engage in numerous value-destroying transactions and published false and misleading disclosures.

21. For example, Lee directed SIAF to undertake numerous issuances of common shares as security for loans that were dumped on the open market and did not disclose these, which acts were found to violate the Oslo bourse's listing requirements. **Ex. C**.

22. This led to delisting by the Oslo bourse after finding "repeated and gross violations of the Merkur Market rules." **Ex. D**, at 12.

23. As a result of this and other mismanagement and fraud, the Company's share price dropped from a 6-year peak of $16.82 on May 19, 2015 to $0.17 on March 29, 2019, when the First SIAF Suit was filed—a 99% near total collapse. It currently trades at $0.07 per share. Accordingly, its market capitalization has also dropped nearly 99%, with a current market value of only $4.8 million—erasing approximately $250 million in shareholder value.

24. In October 2019, both parties agreed that continued litigation may not benefit the Company and decided to come to the negotiating table. The parties then shook hands on a plan to end the litigation and work collaboratively to turn around the Company through various corporate governance reforms.

25. The parties executed the proposed Settlement on June 27, 2020 (**Ex. A**), which was approved by this Court on October 13, 2020. **Ex. B**. The First SIAF Suit was dismissed with prejudice upon the approval. *Id*.

26. The Settlement contemplates a series of corporate governance reforms, aiming to mitigate the Individual Defendants' absolute control over the Company, enhance transparency to shareholders, and revitalize the Company.

27. Specifically, the Settlement requires, among other things, the establishment of a Corporate Governance Committee that will reform how the Company conducts related-party transaction disclosures.

28. The Company was also required to appoint a shareholder-designated director to its own board and audit committee and support another designated director nominee to the board and audit committee of SIAF's aquaculture subsidiary, Tri-way Industries ("**Tri-way**").

29. The Company was further required to search for and appoint a qualified CFO to replace Defendant Lee, who had appointed himself as CFO.

30. To further mitigate overconcentrated power in his hands, Defendant Lee agreed to explore a sale or sunset of his supermajority-voting A-shares. The parties also agreed to explore the possibility of identifying and inviting strategic investors in SIAF and/or Tri-way who could inject equity.

31. Other than the governance reforms, the Settlement also requires the Company to fulfill its promise of distributing 18.3 million Tri-way shares as share dividends to all shareholders, which was originally announced in 2018.

32. In the expectation that the management after reform could revitalize the Company, Plaintiffs did not negotiate for any cash payment as reimbursement for their past and future expenditures of time and money. Rather, Plaintiffs would only be given 250,000 illiquid Tri-way shares from Defendant Lee personally.

B. **Breach of the Settlement and Misrepresentations Concerning the Company's Financial Condition**

    **(i)**     **Defendants failed to perform the Settlement Agreement**

33. Despite being given an opportunity to reform and revitalize the Company, Defendants treated the Settlement as a generous pardon with no strings attached. To date, over a year after the Settlement's approval, Defendants have made almost no effort to comply with its terms, and have continued their gross mismanagement and fraud.

34. Defendants' acts of non-performance include, among others: (i) failure to transfer 250,000 Tri-way shares as agreed; (ii) failure to engage in planning for any Tri-way share dividend to shareholders; (iii) failure to appoint a director to the Tri-way board; (iv) failure to establish a Corporate Governance committee; (v) failure to commence searching for a CFO; (vi) failure to conduct any analysis of the possibility of sunsetting Lee's A-shares; and (vii) failure to engage with Plaintiffs in exploring and identifying and inviting strategic investors.

35. The only act Defendants undertook to perform the Settlement was to "appoint" Mr. Henry Sun – Plaintiff's nominee as independent director, to the SIAF board.

36. But the appointment has been in name alone, as Mr. Henry Sun who is supposedly the head of SIAF's "Internal Control And Audit Committee," has not been given access to SIAF's accountants, books, or indeed, financial information of any kind. Sun Decl. ¶¶ 4-7. Nor has any effort been made to work with Mr. Sun to facilitate the financial reporting process and remedy SIAF's delinquent SEC filings. *Id.*

37. All Mr. Sun has received since his appointment has been verbal and text-message assurances from Defendant Lee that the Company was doing fine and that he had grand projects in the pipeline to revive its business through purported business ventures in Africa. **Ex. E**.

38. Faced with Plaintiffs' repeated demands for compliance, Defendant Lee simply denied any breach, always citing the COVID pandemic. Defendant Lee has never explained how the pandemic could forestall a simple share transfer for eight months, nor how it has prevented provision of audited financials when tens of thousands of other listed companies have done so.

39. Worse still, as detailed below, Lee has decided to keep shareholders in the dark concerning the Company's actual financial condition, and has made false misrepresentations to whitewash SIAF's effective insolvency.

### (ii) Defendants failed to truthfully disclose SIAF's financial condition and Defendant Lee misrepresented the bankruptcy of its "crown jewel" asset

40. Throughout 2020, SIAF did not file any financials. Due to its noncompliance, in early August 2020, SIAF's stock was downgraded to the "pink sheets". As of today, SIAF continues to be delinquent on its SEC filings.

41. According to the official website of the OTC Markets Group, which operates the Pink Sheets, the "Pink Market" includes "penny stocks and shells, as well as distressed, delinquent, and dark companies not willing or able to provide information to investors." SIAF's current OTC "Pink" listing page bears the warning: "Pink No Information."

42. Following downgrade to the Pink Sheets, Defendants' noncompliance with listing obligations continued. For all of 2020 and into 2021, SIAF did not make any timely financial filings, with no filings whatsoever in 2020.

43. The failure to make timely filings contravene the filing requirements necessary to maintain a listing. Indeed, in compliance with SEC Rule 15c2-11, at least one major broker-dealer has ceased accepting buy orders for SIAF due to lack of timely-filed financials. **Ex. F**.

44. Despite shareholders' repeated requests, no books nor any financial data has been provided to shareholders nor the Independent Director Plaintiffs nominated.

45. Plaintiffs have been forced to conduct their own investigations.

46. In September 2020, Plaintiffs commissioned a diligence firm to visit the aqua farms in China operated by a Tri-way's subsidiary named "Zhongshan A Power". The aqua farm developments, which SIAF called the "Megafarm," are Tri-way's major assets, and Tri-way itself, as the developer of these assets, was depicted as SIAF's "crown jewel" by SIAF.[1]

---

[1] *See e.g.,* SIAF May 17, 2019 Press Release "Sino Agro Food, Inc. Reports 2019 Q1 Results," at: https://www.sec.gov/Archives/edgar/data/1488419/000114420419027065/tv521952_ex99-1.htm

47. During its visit to the Megafarm, the diligence firm found a court-issued seal pasted to and sealing the front doors of one of the main on-site buildings. The seal stated: "Seized by The First People's Court of Zhongshan City" on August 27, 2020. According to the accompanying court order and seizure notice, concurrent with filing suit for back rent, the landlord had obtained a pre-judgement attachment on over 2.57 million RMB (approx. $377,000) assets. **Ex. G**.

48. In February 2021, Plaintiffs discovered that Zhongshan A Power, which was leasing certain of the aqua farm assets from a landlord, was forced into bankruptcy proceedings by one of its creditors. **Ex. H**. Concerned with the potential impairment to these critical assets, Plaintiffs asked their nominee director on the SIAF board, Mr. Henry Sun, to inquire with Defendant Lee about the bankruptcy.

49. Defendant Lee assured Mr. Sun that "[SIAF is] by far the biggest creditor of [Zhongshan A Power] that is being sued for bankruptcy." **Ex. E**, at 2.

50. This statement was false.

51. Based on Plaintiffs' investigation and review of Chinese court documents, there are five major creditors including the Megafarm's landlord to whom back rent is owed, making claims in the bankruptcy proceedings for the amount of RMB 8.9 million (approx. $1.4 million), none of whom is SIAF or an affiliate of SIAF. **Ex. I**.

52. Moreover, according to the Chinese court documents, the deadline for reporting debts owed has already passed, and the first creditors' meeting took place on May 10, 2021. Neither SIAF nor any of its affiliates reported debts or participated in the meeting. **Ex. J.**

53. Notably, the recently filed 2019 10-K, which was supposed to be filed over a year ago but which were only filed in response to Plaintiffs' threat of renewed litigation, confirms that

numerous representations SIAF previously made concerning the Megafarm and its business were outright false.

54. The 2019 10-K reveals that "***by August 2019, efforts of the Company trying to revitalize [the Megafarm] failed*** … the Company finally decided to cease operation of [the Megafarm] during September 2019." **Ex. K**, at 6.

55. However, on September 3, 2019, *after* the so-called revitalization effort has failed and when Defendants had "decided to cease operation" of the Megafarm itself, Defendants published a Q&A that boasted that "[t]he revitalization plan for [the Megafarm] has begun its smaller initial steps." **Ex. L**, at 1.

56. Likewise, the accompanying Form 10-Q for the quarter ended September 30, 2019 made no mention of the decision to cease Megafarm's operation. **Ex. M**.

57. The Q3 2019 Q&A, published on December 17, 2019, two months after management had apparently decided that Megafarm had failed and to cease operations, also contained not a single word about the shutdown. **Ex. N**.

58. Astoundingly, though operations had completely ceased and the Megafarm written off as of September 2019, in a Press Release published on March 7, 2020, Defendants described the Megafarm as experiencing "on-going poor performance". **Ex. O**, at 2. Similarly, in another Press Release published on March 30, 2020, Defendants merely stated that there had been "no production" from the Megafarm, without disclosing that it had been shut down. **Ex. P**, at 1.

**(iii) Unbeknownst to shareholders, Tri-way has sold the subsidiary that owns essentially all of Tri-way's assets to a company affiliated with Defendant Lee**

59. Tri-way is SIAF's aquaculture branch. Between late 2016 and early 2017, even as it issued $10 million of stock to collateralize Tri-way's debts, SIAF undertook a carve out transaction that decreased SIAF's ownership in Tri-way from 100% to 36%. **Ex. K**, at 2. At the

time, SIAF billed this as a pre-cursor to listing Tri-way on a stock exchange, "where it will trade as a pure aquaculture play, unlocking value for shareholders." **Ex. V**, at 1-2.

60. According to the Company's disclosures, Tri-way's business consists of five aqua farms, and Tri-way's 100% owned subsidiary, Jiangmen City A Power Fishery Development Co. Ltd ("Jiangmen A Power"), holds essentially all the aqua farm assets. **Ex. Q**, at 3, 5.

61. As disclosed in the 2020 Form 10-K, late-filed on June 23, 2021, Jiangmen A Power acquired "the assets and operation from owners and investors of four other aquaculture farms" in October 2016. *Id.* at 9. A company structure chart in the 10-K continues to indicate that, as of December 30, 2020, Jiangmen A Power owned all assets of the five Tri-way aqua farms (except for the land leased by two of the Megafarm's aqua farms for which it failed to pay rent). *Id.* at 4.

62. Shockingly, Plaintiffs recently found out that this asset-holding subsidiary, Jiangmen A Power, had been transferred to an entity affiliated with Defendant Lee.

63. As shown by the corporate filings with the Chinese government, the shareholder of Jiangmen A Power changed on July 24, 2020. **Ex. R**, at 4. The current shareholder is not Tri-way, but a company named Guangzhou Yili Agriculture Co. Ltd ("**Guangzhou Yili**"). *Id.* at 1.

64. Digging through Chinese corporate filings, Plaintiffs discovered that Guangzhou Yili is affiliated with, and likely controlled by, Defendant Lee, as *Lee serves as Guangzhou Yili's legal representative, sole director, and general manager*. **Ex. S**, at 3.

65. Guangzhou Yili's sole shareholder is a company named Guangzhou Yili Nawei Trading Co. Ltd. ("**Yili Nawei**"). *Id.* Chinese corporate filings show that Yili Nawei is controlled by an individual named Jianfeng Zhou, who is an employee at Lee's company, Guangzhou Yili. *Cf.* **Ex. T**; **Ex. S**, at 3.

66. According to SIAF's disclosures, Yili Nawei is a major customer of SIAF and is "*an unrelated Chinese third party owned company*". **Ex. U**, at 2-3 (emphasis added).

67. Defendants transferred a subsidiary that holds essentially all of Tri-way's assets to a "third-party owned" company where Defendant Lee serves as the sole director and officer.

68. Assuming this subsidiary, Jiangmen A Power, still held assets at the time of the transfer, most of Tri-way's assets have now been diverted while SIAF's disclosure continued to represent that it still owned these assets.

**(iv) SIAF is in default of tens of millions in loans**

69. SIAF has been in default of a multimillion note originally issued by Euro China Capital AB ("**ECAB**") since at least the end of 2017.

70. By the end of 2020, the amount due to ECAB was over $25 million, which is significantly in excess of SIAF's cash balance of $188,846 as of that point.

71. According to the 2020 10-K, "the Company hopes to continue to work with ECAB to settle its obligations under the ECAB Note." **Ex. Q**. at 68.

72. However, the exact same statement was made in the 2018 10-K, which is where SIAF first disclosed receiving a default notice. **Ex. W**, at 2.

**(v) Defendant Lee breached his fiduciary duties by directing the Company to default on the Settlement and by grossly mismanaging the Company**

73. As mentioned above, Defendant Lee has absolute control over the Company. Because of his position of control, Lee has been able to direct the wrongful acts complained of.

74. Defendant Lee has taken no effort to comply with the Settlement.

75. Upon information and belief, over the past year, instead of focusing on constituting a corporate governance committee and hiring a new CFO, Defendant Lee was absent from Hong Kong and China for long periods, prospecting for business opportunities in Africa instead. **Ex. E**.

76. As far as Plaintiffs are aware, no one is actively running the Company's fisheries business on a day-to-day basis.

77. After receiving Plaintiffs' demand letter requesting compliance with the Settlement, Defendant Lee still took no material action to ameliorate the Company's default.

78. Instead, Lee responded with a series of denials that claimed there was no deadline to comply and offering a series of excuses. **Ex. X**.

79. For example, in response to Plaintiffs' demand to comply with governance reforms called for in the Settlement, Lee claimed that SIAF had complied already by attaching a 2013 corporate "governance" policy that has never treated as anything more than a piece of paper. *Id.* at Ex. 1. Lee's letter also attached a typed up "Written consent of Directors to Action in lieu of Meeting" in which five purported directors approved membership to various committees on the board for a "Tenure" from January 1, 2017 to December 31, 2019—the period in which SIAF's business was destroyed and *prior* to the Settlement. *Id.* at Ex. 2.

80. The "resolution" attaches a signature page dated "the 13th day of February 2013." *Id.* Of the members of the "Audit and Risk Committee" that it purported to list, one, George Koi Ming Yap, resigned on August 15, 2017. **Ex. Y**. The other, Mr. Nils-Erik Sandberg, resigned on November 8, 2018. **Ex. Z**.

81. As a result of Defendants' misconduct, mismanagement, breach of fiduciary duties, and fraud, the Company's stock has already been delisted, and may even be removed from trading on the "pink sheets." Furthermore, the Company's "crown jewel" asset is in bankruptcy and no effort has been made to preserve it.

82. Such continuous gross mismanagement will soon extinguish any hope for shareholders to recover their investments.

## C. Derivative Allegations and Demands to the Board

83. Plaintiffs bring this action derivatively in the right and for the benefit of SIAF to redress the wrongful conducts outlined herein by the Defendants.

84. Plaintiffs will adequately represent the interests of SIAF and its shareholders in enforcing and prosecuting its rights. Prosecution of this action, independent of the Individual Defendants, is in the best interests of SIAF and its shareholders.

85. Plaintiffs, through their undersigned attorney, have sent a demand letter to the chairman of the Company's board and Defendant Lee on May 6, 2021, requesting compliance with the Settlement and expressly stating their intention to bring a lawsuit should Defendant Lee fail to timely provide a satisfactory response. Defendant Lee has refused to comply with the Settlement's terms. Plaintiffs therefore brings this action.

## FIRST CAUSE OF ACTION
### (Breach of Contract)
### (As to Defendant SIAF)

86. Plaintiffs repeat and reallege each of the foregoing allegations as if more fully set forth at length herein.

87. The Settlement constitutes a valid and binding written agreement.

88. Defendant SIAF breached the Settlement by failing to, among others, (i) transfer 250,000 Tri-way shares as agreed; (ii) engage in planning for any Tri-way share dividend to shareholders; (iii) appoint a director to the Tri-way board; (iv) establish a Corporate Governance committee; (v) commence searching for a CFO; (vi) conduct any analysis of the possibility of sun-setting Lee's A-shares; and (vii) engage with Plaintiffs in exploring and identifying and inviting strategic investors.

89. At all relevant times, Plaintiffs have fully performed all stipulations, conditions and covenants under the Settlement.

90. As a direct and proximate result of SIAF's breaches, Plaintiffs and their fellow shareholders, as well as the Company, have sustained damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Fraud)
### (As to All Defendants)

91. Plaintiffs repeat and reallege each of the foregoing allegations as if more fully set forth at length herein.

92. Defendants, individually and in concert, directly or indirectly, concealed the financial information of the Company from the shareholders, and disseminated or approved the various false statements and omissions outlined herein, which they knew to be false or deliberately disregarded in order to make the statements made, in light of the circumstances under which they were made, not misleading.

93. As a direct and proximate result of Defendants' breaches, Plaintiffs and their fellow shareholders, as well as the Company, have sustained damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duties)
### (As to Defendant Lee)

94. Plaintiffs repeat and reallege each of the foregoing allegations as if more fully set forth at length herein.

95. Because of his position, Defendant Lee owed SIAF the fiduciary obligations of good faith, trust, loyalty, and due care, and were required to use his utmost ability to control and manage the Company in a fair, just, honest and equitable manner.

96. Defendant Lee has breached his fiduciary obligations in that he has:

   a. failed to disseminate accurate and truthful information to the Company, its shareholders, the investing public, and certain governmental regulatory bodies;

   b. failed to prudently manage the Company in a way that put the best interests of the Company first, including by (i) allowing the Company to default on the Settlement, (ii) allowing the Company to fail to comply with SEC filing requirements; (iii) allowing the CFO position to be left vacant, and (iv) misrepresenting about the bankruptcy status and failing to forestall the impairment to the Company's critical assets; (v) diverting the Company's equity asset to himself or entities controlled by him; and (vi) made false and misleading statements to shareholders.

97. Due to Defendant Lee's breaches of fiduciary duties, SIAF has been substantially harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand that judgment in favor of Plaintiffs as follows:

   A. Order Defendants to comply with the Settlement immediately.

   B. Enter judgments against Defendants for damages in an amount to be determined at trial or other hearing.

   C. Award Plaintiffs reasonable attorney's fee, costs and other expenses incurred in the prosecuting this action.

   D. Appoint a Receiver.

   E. Grant other relief as this court deems equitable and just.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues in this action.

Dated: November 8, 2021

**AFN LAW PLLC**

_____
Angus F. Ni
41 Madison Ave, 31st Fl.
New York, NY 10017
(646) 453-7294
angus@afnlegal.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENG REN SILK ROAD INVESTMENTS LLC,
HENG REN INVESTMENTS LP, ARNE H. FREDLY,
derivatively on behalf of
SINO AGRO FOOD INC.

                    Plaintiffs,

     -against-

SINO AGRO FOOD INC.,
LEE YIP KUN SOLOMON,
TAN POAY TEIK,
CHEN BOR HANN,
LIM CHANG SOH,

                    Defendants.

Case No.

**VERIFICATION**

I, PETER HALESWORTH, being duly sworn, deposes and says that deponent is an officer of the Plaintiff entities in this action and has read this Complaint; deponent knows its content and knows that it is true to the best of deponent's knowledge, except as to those matters stated to be upon information and belief, and as to those matters, deponent believes them to be true.

                                      Peter Halesworth, on behalf of
                                      Heng Ren Silk Road Investments LLC
                                      Heng Ren Investments LP

Sworn to me before this 1st day of November 2021

_____
Notary Public

ROBERT G. HAYES
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
January 27, 2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HENG REN SILK ROAD INVESTMENTS LLC,
HENG REN INVESTMENTS LP, ARNE H. FREDLY,
derivatively on behalf of
SINO AGRO FOOD INC.

                    Plaintiffs,

       -against-

SINO AGRO FOOD INC.,
LEE YIP KUN SOLOMON,
TAN POAY TEIK,
CHEN BOR HANN,
LIM CHANG SOH,

                    Defendants.

Case No.

**VERIFICATION**

I, Arne H. Fredly, being duly sworn, deposes and says that deponent is an officer of the Plaintiff entities in this action and has read this Complaint; deponent knows its content and knows that it is true to the best of deponent's knowledge, except as to those matters stated to be upon information and belief, and as to those matters, deponent believes them to be true.

                                                                 Arne H. Fredly

Sworn to me before this __2__ day
of November 2021 in Norfolk, Virginia.

_____
Notary Public

This notarial act was performed online by way of
two-way audio/video communication technology.

KETSIA MCCLEASE
Electronic Notary Public
Commonwealth of Virginia
Registration No. 327724
My Commission Expires Apr 30, 2023